**Wallace J. McCULLEN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 36032.**

Court of Criminal Appeals of Texas.

Nov. 6, 1963.

Rehearing Denied Nov. 27, 1963.

Walter M. Sekaly, Beaumont, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is "enticing a minor to a house for the purpose of proposing to such child the performance of an act of sodomy"; the punishment, confinement in jail for one year.

The State relied primarily upon the testimony of the mother of the prosecutrix, and the prosecutrix. The mother testified that she and her husband and five-year old daughter lived approximately six houses from appellant's house; that she had seen

her daughter playing in another yard about 2:30 in the afternoon; that she went to get some Easter candy and left the daughter playing; that she returned at approximately 2:45; that the prosecutrix came in; that she was real excited and started to tell her what the man had done; that he told her to come in the house; that he had a surprise for her; that the man told her that he had "a big red sucker" that he wanted to give her; that she came in the house, and when she got there he said he wanted to surprise her, so she told me; that she let him cover her head so he could give her a surprise; that he went to the bath room and got a towel and put it over her head; that she said he put something in her mouth; that she peeped at it; that she said it was his "weenie"; that he told her not to tell her mother and daddy; that as she came in the house all this came pouring forth from her daughter; that it took her about 15 minutes to tell it, since she was so excited; that when she (the mother) began to understand she sat down, and listened to her daughter to see what she was trying to tell; that the little girl was excited; that she had nightmares over it; that he gave her some candy and told her not to tell her mother and daddy; that when she asked her daughter what the "weenie" meant she said he unzipped his pants.

The prosecutrix testified that she was 5 years of age; that she went to Sunday School, and if you did not tell the truth it was a lie; that if you did tell the truth it was not a lie; that she got a spanking if she told a lie. She was qualified and no objection was made to her testimony. She testified that she "was playing with Larry and Jerry, and they wanted to go get a snack, and then that man called me in his house and then he got a towel and he put it over my eyes and he unzipped his pants, and he let me suck it, and then when I was leaving, he said, 'Don't tell your mama and daddy', so I did." She further testified that she was playing in the Eastman's yard; that it was right next door to where the

man lived. She related that she was alone in the yard, that the man came out and asked her to come in his house; that he told her, "It's going to be a surprise"; that she was in the hall on a chair; that he got the towel in the bathroom, and he put it over her eyes, told her not to peep, but she did peep; that he unzipped his pants and put his thing in her mouth.

Mrs. W. J. McCullen testified as a witness for the appellant. She stated that she was his wife; that they had been married 32 years; that at the time in question she was working; that she had her lunch hour between 2 and 3 o'clock; that she went home right at 2, her husband picking her up from work; that she did not leave the house until about 3 minutes until 3 on the day in question; that she had lunch with her husband and she was with him at the time.

Mrs. Grace Howell testified that she worked at the same place as Mrs. McCullen; that Mrs. McCullen's lunch hour was between 2 and 3 o'clock that day; that she did not know where she went.

Appellant testified that he did not know the prosecutrix on April 10, 1962; that she was not in his home that day; that he picked up his wife at 2 o'clock and took her back 2 or 3 minutes before 3 o'clock; that he was 59 years of age.

■ Appellant contends that the evidence presented by the State is wholly insufficient to identify the accused with the offense alleged in the indictment. We have examined the entire record with great care and been unduly cautious in weighing and appraising it. The above recitation of the facts in this case follows very closely the brief filed herein by the State. The facts as stated portray this case in the light most favorable to the State. We observe in reading the State's brief and in carefully looking for two statements made therein that the record does not reflect either statement that the prosecutrix. testified, "that

she saw the man a few months before," nor does the record reflect the State's version that "the prosecutrix identified the appellant at the trial." The mother testified that at the time of the alleged offense that she did not know the appellant at all. She did testify to a question asked her by the State: "This is Mr. McCullen's house here?" Answer: "Yes." She further testified that her daughter "pointed the house out to me." The house was not further identified. At no place in the record did the State ever adduce any testimony any stronger than: *"this man, his house, he."* The State inquired of the prosecutrix: Q: "Do you know this man right over here in the blue suit?" Answer: "No." The State did develop testimony, from the prosecutrix, that the Eastman yard was right next door to where the man lived. The burden is on the State in any criminal prosecution to prove beyond a reasonable doubt that the accused committed the criminal act charged. De La Paz v. State, 161 Tex.Cr.R. 514, 279 S.W.2d 101. As stated by this Court in Mayo v. State, 156 Tex.Cr.R. 26, 238 S.W. 2d 777; "The state was under the burden of showing that this appellant was the man who committed the offense charged. Unless and until the state satisfied that burden, *the guilt of this appellant has not been* shown." Gandy v. State, 139 Tex.Cr.R. 140, 139 S.W.2d 275, also supports the holding that the accused must be identified as the person who committed the offense. We fail to find in the record any evidence to identify the appellant as the party who committed the offense. The judgment must be reversed.

■ We also observe that the state inquired of Lt. Robbins in rebuttal, by way of impeachment of the appellant's testimony, about certain statements made by appellant to Lt. Robbins. The record shows that appellant was under arrest at the time. On another trial hereof this matter should not be inquired about. Art. 727, Vernon's Ann.C.C.P.; Spires v. State, 123 Tex.Cr.R. 357, 59 S.W.2d 117.

We shall pretermit a discussion of the other complained of errors, as they doubtless will not occur upon another trial of this cause.

For the reason stated, the judgment is reversed and the cause remanded.